EDWARD J. MOORE, surviving trustee, &c., of Thomas C. Barr, deceased,

*v.*

J. NETHERMARK DOWNEY et al.

[Decided June 25th, 1914.]

1. A bequest to trustees to pay the testator's wife "annually in quarterly payments during her natural life an amount equal to one-half the net income" from his estate, which consisted of 'both real and personal property, was not an "annuity," which is the bequest of a sum certain and does not even include the gift of the interest of a fixed and certain sum of money.

2. Annuities are not generally apportionable.

3. A bequest in trust to pay the testator's wife quarterly during her natural life an amount equal to one-half the net income accruing from his estate, which included both real and personal property, was not a bequest of income payable at fixed times, and the wife's representatives were entitled to such an apportionment of the income as would have given her so much as accrued from day to day during her life, including interest accruing on mortgages and dividends declared during her life, although not payable until after her death.

4. Testator, after specific legacies, devised the entire residue to trustees for investment and to pay out of the balance one-half of the net income to his wife for life, and after her death certain amounts to each of two legatees for life with cross-survivorship, and a certain amount to another legatee for life, such legatees being the wife's kin, and to pay out of the principal certain amounts to the issue of two of the legatees in contingencies which had not occurred, and out of the remaining one-half of his income not disposed of directed two annual payments of $2,500 each to a nephew and niece for life, and a payment out of the principal to the issue of such nephew and niece, respectively, of $50,000, with cross-remainders on survivorship, upon contingencies which had not occurred, and gave all the remaining surplus income equally to two sisters during their natural lives, and three-ninths of all the residue to each of them, their heirs and assigns, and one-ninth each to a nephew and two nieces. The payments to legatees other than his sisters amounted to less than the annual income of the estate, leaving a surplus.—*Held*, that during their joint lives the sisters were equally entitled to the surplus income of the entire estate, after deducting the special legacies, and that until the happening of the contingency requiring the payment out of one-half of the principal of the legacies to the issue of the nephew and niece or either of them, the principal was to be held as an entire fund.

On bill for construction.  Heard on bill, answers and proofs.

*Mr. Frank Bergen,* for the complainant.

*Mr. Chauncey G. Parker,* for the defendants Dorey and Birch.

*Mr. Halsey M. Barrett,* with *Mr. William R. Brinton* (of the Pennsylvania bar), for the defendants Downey and Lees.  (*Barrett & Barrett,* solicitors.)

*Mr. Norman W. Harker,* for the defendants, executors of Mrs. Barr.

·EMERY, V. C.

This bill is filed by Edward J. Moore, the surviving trustee under the will of Thomas C. Barr, for a construction of his will on three contested points.  The *first* is a question arising on the claim of the executors of the widow of the testator for the payment to them of certain income of the estate, amounting to $2,-760.76, now in the hands of the trustee, and being a portion of the income of the residue of the estate which was given and devised to the executors and trustees by the eleventh clause of his will, upon trusts therein specified.  The first trust (as to payments) was as follows:

"*First.* I direct that my said executors or trustees pay to my beloved wife Loraine H. Barr annually in quarterly payments, during her natural life, an amount equal to one-half the net income accruing from my said estate."

The testator died February 26th, 1908, and during the lifetime of the widow payments to her under this clause were made quarterly on the 28th days of February, May, August and November of each year.  The last payment to her was made on February 28th, 1913, and she died on May 21st, 1913.  If the income is apportionable, then the sum of $2,760.76 is the proportion of the quarterly payment to which the widow at the time of her death would have been entitled out of the entire income up to the quarter ending on the 28th of May, 1913.  Her executors

claim that they are entitled to such apportionment of this entire income. The ground upon which counsel for these executors base this claim is that this bequest to the widow is a gift of an annuity, and while admitting that annuities are not generally apportionable, claim that this annuity was in lieu of dower and for the maintenance and support of the widow, and, therefore, under the decisions of our courts, is excepted from the general rule and is apportionable. This bequest of income is not, however, in my judgment, an annuity. An annuity is the bequest of a sum certain, and even the gift of the interest of a fixed and certain sum of money is not an annuity. *3 Pom. Eq. Jur.* (*3d ed.*) § *1134;* citing, *inter al., Whitson* v. *Whitson* (*1873*), *53 N. Y. 479, 481; 2 Redf. Wills 453.* Much less can the gift of the income or of a specified portion of the net income of the general residue of the estate, including, as here, real as well as personal estate, be considered an annuity or the gift of a sum certain.

Treating this devise and bequest to the wife not as the income payable at fixed times, her executors are, however, under the general rule well settled, entitled to such an apportionment of the income as will give to the widow the benefit of so much of the income as accrued from day to day during her ife. *Brombacher* v. *Berking* (*Vice-Chancellor Reed, 1897*), *56 N. J. Eq. 251, 255.* This would include interest accruing on mortgages and also dividends declared during her lifetime, although not payable until after her death. The case does not show what the apportionment would be on this basis, and this may be the subject of further inquiry, if necessary.

The *second* and *third* questions are connected and involve the general question whether the entire principal trust estate or fund in the hands of the surviving trustee must be held intact for the purpose of paying the income of the entire estate (after certain deductions) to the two sisters of the testator during their joint lives, or whether, after the death of the widow, who was entitled to one-half of the net income during her life, one-half of the principal of the estate becomes immediately divisible among the persons entitled as residuary legatees to the estate, and whether, therefore, the sisters of testator are entitled to require only one-

half of the principal to be retained for the payment of income to them on this half for their lives. For the sisters it is contended that the entire principal must be held at least during their joint lives for the payment to them equally of all the income thereon, including that previously enjoyed by the wife, after deducting specific annual payments of income to other relatives under the will. These payments to other legatees, together amounting to $10,500 annually, are much less than the income of the estate, which exceeds $800,000, and which, as now invested, yields an annual income of about $48,000.

The sisters are also the residuary legatees to the extent of one-third each of the entire fund not otherwise disposed of, but they claim that no portion of the principal is yet divisible. The residuary legatees of the trust fund other than the sisters, being a nephew and nieces of the testator and a niece of his wife, and who are each entitled to one-ninth of the residue, claim that the sisters are entitled only to the income of one-half of the principal fund (less the special deductions), and that after the death of the wife, one-half of the principal became immediately divisible among the residuary legatees. These two questions, the right of the sisters to the income of the entire fund, and the right to distribute any portion of the principal, are thus inseparably connected, and decision upon one point affects the disposition of the other. The difficulty in reference to the construction of the will on these question—for there is a difficulty—arises from the fact that the will is not only inartificially drawn, but in reference to the particular point now in question, it is drawn confusedly, as will appear from a recitation of its provisions.

The will, after a direction for payment of debts and funeral expenses, and for the payment of specific legacies (all of which amounted to about $50,000), gave and devised the entire residue of his estate to his executors and trustees, in trust for the uses thereafter named. This residuary clause vested in the executors the legal estate in the entire residue, leaving, however, the equitable or beneficial estate therein to be further declared. Directing that the trustees invest and keep the estate invested and collect the rents and profits therefrom, pay all taxes or other charges, the testator then directed that they pay over the balance

after such payment. This "balance" must be taken on the face of it to relate to and include only the payment of net income of the estate, considered as a whole. The first payment to be made is to his wife annually in quarterly payments during her life "of an amount equal to one-half of the net income." This direction contemplates apparently a division into two parts of the net income of the whole estate invested as one trust fund. A provision for the payment of one-half of the net income of an entire principal fund is manifestly a different thing from a direction to pay the net income of one-half of the principal fund. And under this direction, I think the trustees have no authority to make such division of the principal fund into two separate parts or funds. This direction completes the eleventh item or paragraph, and the next, or twelfth paragraph, provides for the payment after the death of his wife, to each of two legatees, Mrs. Fretz and Miss Nippes, of $2,500 during their respective lives, with cross-survivorship to each of these legatees, and to Frank P. Nippes, Jr., of $500 during his life, without survivorship provision. These three legatees are, it is said, of testator's wife's kin, but although these payments are not to be made until after his wife's death, there is no direction that they are to come out of the half of the net income, which would have been paid to the wife had she been living, nor is there any direction which would make them payable otherwise than out of the income generally after his wife's death. Following this is the thirteenth paragraph, which provides for the payment out of the principal of the estate of two sums of $50,000 each to the issue of these two legatees, Mrs. Fretz and Miss Nippes, in certain contingencies. These contingencies have not yet occurred, and at present only have a bearing, as being required to be provided for in case any distribution of principal be now directed. The important features of the thirteenth paragraph, on the present questions, are— *first*, that this payment of principal is not specially directed to be made out of a half of the principal, nor is there any provision that would indicate it is not payable out of the principal generally, and *second*, that these payments of principal to the issue of these two life tenants are not, by this clause or any other, made expressly dependent on Mrs. Barr's death. They only be-

come so dependent by reason of the fact that such payment out of the principal (considered as a single trust fund) would, *pro tanto,* deprive Mrs. Barr during her life of one-half of the net income of the whole estate, previously given upon this trust, and might therefore by implication be payable only after her death. After these directions which, it will be seen, fall far short of one-half of the net income and do not dispose at all of the balance of the one-half of the net income payable to the wife during her life, the testator without any further special express reference to this balance of the one-half of the net income which the wife had received, seems to assume by the next paragraph of his will that he had in fact already made such direction as to this balance of income.

The fourteenth paragraph reads: "I further direct that out of the remaining one-half of the income of my estate *not yet disposed of* [the italics are mine] there be paid two annual payments of $2,500 each" to a nephew and niece during their respective lives. This clause apparently treats the "remaining one-half income," *i. e.,* the income which remained after the half income given to the wife for life, as a separate fund, and apparently authorizes the inference that the payments of income to the wife's relatives after her death were by the testator considered as being made as, in part at least, "disposing of" the one-half income previously given to the wife. But while the entire income is apparently divided, there is so far no indication or suggestion that the principal is to be divided, or is not to remain entire.

The next paragraph, the fifteenth, provides for a payment to the issue of this nephew and niece, respectively, of the sum of $50,000, with cross-remainders on survivorship, and these two sums of $50,000 each are to be paid on contingencies which have not yet occurred. These payments, however, are specially directed to be made "out of the principal or *corpus* of the second one-half of my estate." Up to this point in the will, as I have said, there had been no indication of an intention that the entire principal of the trust estate should at any time be divided into two portions, and this direction for manner of payment at this time by a division of principal cannot, in my judgment, avail

28

or be considered sufficient to establish the right to make such division or principal into two funds from the inception of the trust.

It seems to be, however, a plain, clear direction that these payments, when made, shall be made in this manner, and when the contingency arises requiring the payments, or either of them, to be made, under this clause, a division of the principal into two trust funds may then be required, in order to carry out all, the express provisions of the will. Had similar directions been given that the $50,000 legacies previously given to the issue of the wife's kin be paid "out of the first half of my estate," I am inclined to think that the division of the entire estate into two trust funds would then have been required on the happening of the contingencies therein provided for payment, and that in the absence of any special direction for a previous division, the division into two funds must have taken place as soon as the contingency for payment out of either specified half of the principal first arose. But no such provision for payment of the two $50,000 legacies to the issue of the wife's kin was made, and in the absence of any other provision controlling the holding of the trust estate as an entire estate, it must, I think, be so held, at least, until this contingency for payment under this fifteenth paragraph arises, and the trustee under the will has no authority to divide the principal of the trust estate into two portions until that time.

The matter of the disposition of the "surplus income" until the time arrives for the division of the principal, remains to be specially considered.

Up to this point in his will (the fifteenth paragraph), the testator had made provision, first, for the entire one-half of the net income during his wife's life, with an express disposition after her death, among her relatives, of a portion only of this one-half income which would have come to her, leaving the balance of this one-half undisposed of by any express direction, and he had also, secondly, made express provision for only a portion of the other one-half of the income of the entire estate.

Then follows a separate distinct paragraph, the sixteenth, dealing with income alone, as follows: "I further direct that

all remaining surplus income be divided equally and annually between my two sisters, Katherine V. Dorey and Helen L. Birch, during their natural lives." This provision gives rise to the principal dispute, which is, whether "surplus income" under this clause means the income not previously effectively disposed of by the previous bequests of income, or whether the "surplus income" bequeathed by this clause is the surplus only of the second half of the income, being that not given to the wife during her life. The latter contention is based on the general claim above discussed that it sufficiently appears on the whole will that a division of the principal into two funds from its inception is contemplated, and that if this be established as the true construction of the will, then the "surplus income" referred to in this paragraph must be the surplus only of the income of the second or remaining half of the principal fund referred to in the fourteenth paragraph as being the surplus "of the remaining one-half of the income not yet disposed of" by the legacies to the wife and others after her death, by the paragraphs preceding the fourteenth.

The "surplus" income, taking this in the sense of income not actually or effectively disposed of, certainly included a balance of income after the wife's death not absorbed by the payments to the previous legatees, and the precise question is whether this express direction as to "surplus income" includes all income not actually disposed of, or whether this bequest of the surplus income is to be treated as a specific bequest of the surplus of the remaining or second one-half. If so, the "surplus" of the first one-half falls into the general residuary bequest of the equitable or beneficial estate in which the trustees have the residuary legal title. This clause, the seventeenth, directs all the residue to be divided into nine equal parts and paid over, three-ninths to each of his sisters, her heirs and assigns, and one-ninth each to his nephew J. H. Downey, his niece Helen L. Downey, and Katherine N. Nippes, his wife's niece. The time for this payment is not expressly fixed, but treating the previous clause as one disposing of the entire surplus income of the estate, not merely of the surplus of one-half of the income, this last residuary clause applies to the principal fund alone of the equitable estate, leav-

ing the previous clause to be construed as the residuary clause applying to the income.

It must be conceded, I think, that by reason of the confused and inartificial character of the will as bearing on these points of dispute, the contention can fairly be made that such division of principal into two funds from its inception and a separation of the incomes into two distinct portions is suggested or indicated, but, as I have stated, it cannot be safely said, that taking the whole will, such division has been directed, or that there are any directions in the will sufficient to justify the conclusion that the testator intended in the sixteenth paragraph to restrict the "surplus income" to that of the second half of the fund referred to in the fourteenth paragraph.

On considering the whole will and the arguments and briefs of counsel, I reach the conclusion, first, that during the joint lives of the sisters, they are equally entitled to the surplus income of the entire estate after deducting the special legacies, and second, that until the happening of the contingency requiring the payment out of one-half of the principal fund of the legacies to the issue of J. Nethermark Downey and Helen M. Downey, or either of them, the fund is not divisible under the will, but is to be held as an entire fund. And this construction, as to the time of division, does, I think, carry out all the provisions of the will. Any construction fixing either the inception of the trust or any other time for the division of the principal, must necessarily rest more on a supposed plan, indicated or suggested by the partial and incomplete provisions, rather than on the construction of the words of the entire will actually used by the testator and from which his intention must finally be determined.

Whether, on the death of either of the sisters, the payment to the survivor of either the entire or any portion of this surplus income is to be continued, is not decided. Decision upon this point should not take place until the question arises and the parties then interested are heard, and at this time would be premature.