The complainant, Fidelity Union Trust Company, executor and trustee under the last will and testament of J. Ackerman Coles, deceased, brings this bill of complaint and prays for the construction of certain clauses in his will and for instruction in reference thereto. The facts are stipulated.
The deceased, a bachelor, died September 16th, 1925, a resident of Scotch Plains, Union county, New Jersey. His will dated June 5th, 1925, was admitted to probate by the surrogate of Union county, December 28th, 1925.
Under the seventh paragraph of his will the testator devised and bequeathed all the rest, residue and remainder of his estate, real and personal, to complainant as executor and trustee to hold the same during the "twelve lives" of the following: Ernest R. Ackerman, Marion S. Ackerman, Sr., Maria Ackerman Rushmore, Lydia A. Murphy, Caroline E. Lindsley (also known as Caroline E.A. Lindsley) and William M. Crane (first cousins of the deceased), Marion S. Ackerman, Jr., Warren Ackerman, James Harvey Ackerman (also known as James Hervey Ackerman), Richard Crane, Howard Crane and Jeanie Chambers (second cousins of the deceased). With the exception of Ernest R. Ackerman, Caroline E. Lindsley and William M. Crane, all of the foregoing are still living.
The corpus of the trust created by the sixth paragraph of the will is property known as numbers 15-17-19 West Thirty-ninth street, New York City, upon which is erected a seventeen-story loft and office building.
On February 4th, 1929, pursuant to section 44 of the Decedent Estate law of New York, complainant as executor caused a duly authenticated copy of the will and proof of probate thereof to be recorded in the surrogate's court of New York county, and letters were issued March 4th, 1928, to complainant as ancillary executor.
During his lifetime the testator leased the New York property to the Novem Realty Corporation for a term of years beginning May 1st, 1925, and ending April 30th, 1946. In the lease it was provided that the lessee should have the privilege of purchasing the premises at any time during the first *Page 499 
day of December, 1925, and the first day of December, 1933, for the sum of $500,000. The option was not exercised and the trustee has been and still is collecting the rents and the income from the property.
On February 1st, 1932, complainant brought an action in the supreme court of New York, against the defendants named in the present suit which resulted in a decree dated April 12th, 1933, from which no appeal can now be taken, the time having expired.
Warren Ackerman, referred to in the eighth paragraph of the decedent's will, died August 26th, 1893, a resident of Union county, New Jersey, leaving a will admitted to probate by the surrogate of that county. J. Ackerman Coles was named as one of the trustees under the will of Warren Ackerman and qualified and acted in that capacity. Individually and as one of the trustees under the will he engaged in litigation in this court relating to the construction of the will of the deceased. Ackerman v.Ackerman, 81 N.J. Eq. 437.
The questions presented by the bill of complaint in this suit are:
I. Under paragraph seven of the will is it the duty of the complainant, after paying the annuities as directed, to set aside one-fourth part of the balance of the net annual income derived from the corpus of the residuum of the estate and reserve and hold the same, with the accumulated income from the investment thereof, during the "twelve lives" mentioned in said paragraph and upon the death of the last of said "twelve lives" to divide said one-fourth part, with such accumulated income, as a part of the corpus of the residuum, into as many equal shares as shall be necessary to make distribution in the manner specified among the designated charities or such of them as shall then be existent?
The seventh paragraph deals with the residue of the estate. Certain clauses of that paragraph control the disposition of both income and corpus of the trust funds established by paragraphs "Sixth" and "Eighth." By the seventh paragraph the testator directs that the residue of the estate be held in trust by the complainant during the "twelve lives" mentioned. The income is charged with the payment of a number of *Page 500 
annuities, after the payment of which one-fourth part of the balance of the net annual income is directed to be reserved and accumulated, the details of which will be treated later herein. The remaining three parts of the net income are to be divided and distributed quarterly in the manner specified in the will among the "twelve lives," or such of them as may survive, and among certain charities, or such of them as shall then be existent. The class among whom the three parts of income are to be divided and distributed are designated in the will as "beneficiaries." Upon the death of the last of the "twelve lives" the corpus, including the portion reserved with its accumulations and all legacies which may lapse or otherwise fall, is divided in the manner specified among the charities or such of them as shall then be existent. The charities named are the remaindermen under the will.
The question under this heading relates then to the method of handling the one equal part with its accumulations thereon, mentioned in the following quotation from the seventh paragraph:
"* * * to divide the balance of said net annual income into four equal parts, reserving and accumulating one of said equal parts and adding the same with its accumulations thereon to thecorpus of my estate until the distribution of the said corpus
as in this will provided for; and dividing and distributing the remaining three parts of said net income quarterly as hereinafter named to the designated natural persons or such of them as may survive, and among the charities hereinafter named, or such of them as shall then be existent, in such manner that each beneficiary may receive and have the following designated number of equal shares thereof, to wit:"
(then follow the names of the beneficiaries with designations of the number of shares to be received by each, also other directions.)
"Upon the death of the last of said `twelve lives' my said trustees shall convert my said trust estate into money, provided, always, that the real estate is not to be disposed of at auction or public sale, and shall divide the corpus of the same, including therein the aforesaid reserved portion of the income with its accumulations and all legacies and devises which may lapse or otherwise fail which are hereby made part of saidresiduum of my estate, into as many equal shares as shall be required to make the following distribution among the charities hereinafter named or such of them as shall then be existent, * * *" *Page 501 
(then follow the names of the charities with designations of the number of shares to be received by each, also other directions.)
That portion of the quotation above from the seventh paragraph "reserving and accumulating one of said equal parts and adding the same with its accumulations thereon to the corpus of my estate until the distribution of the said corpus as in this will provided for," it seems clear to me, grants power to complainant to set aside and hold the one equal part with the income from the investment thereof with no authority to distribute or pay over the same except as hereinafter set forth.
It is contended that the one equal part with its accumulations thereof should be merged each year with the corpus of theresiduum. This would substantially augment the income from thecorpus to the advantage of the class designated as the beneficiaries and proportionately reduce the fund to be distributed among the remaindermen upon the death of the last of the "twelve lives," and would be contrary to the testator's intent and destructive of the identity of the one equal part and its accumulations. The intent of the testator and his desire to preserve the identity of the one part and its accumulations and to keep them intact is found in that portion of his will where he says: "and dividing and distributing the remaining three parts of said net income quarterly." The direction is to divide and distribute the remaining three parts, not four parts. Had it been the intention of the testator to include in that provision the one part and its accumulations he could have said so. Again, the first and only direction to disburse or pay out the one equal part and its accumulations is contained in that portion of the paragraph which deals with the distribution of the estate among the remaindermen where the complainant is directed upon the death of the last of said "twelve lives" to "divide the corpus of the same, including therein the aforesaid reserved portion of theincome with its accumulations." (Italics mine.) Complainant will hold intact the one-fourth part with its accumulations and divide the same among the remaindermen as part of the corpus, upon the death of the last of the "twelve lives." *Page 502 
II. Under paragraph eight of the will is it the duty of the complainant to set aside one-fourth part of the net annual income from the principal of the trust fund established by said paragraph and reserve and hold the same with the accumulated income from the investment thereof, until the death of the last survivor of the testator's first cousins named in said will (to wit: Ernest R. Ackerman, Marion S. Ackerman, Sr., Maria Ackerman Rushmore, Lydia A. Murphy, Caroline E. Lindsley and William M. Crane) who were living at the time of the death of Warren Ackerman and upon the death of such survivor to divide and pay over said one-fourth part with the accumulated income from the investment thereof, as a part of the said principal of the trust fund, among the same beneficiaries and in the same shares, manner and estates as, by the terms of paragraph seven of said will thecorpus of the residuum is to be distributed and divided?
III. Under paragraph six of the will is it the duty of the complainant to set aside one-fourth part of the net annual income from the principal of the trust fund established by said paragraph and reserve and hold the same with the accumulated income from the investment thereof, during the lifetimes of the testator's first cousins, Lydia A. Murphy and Marion S. Ackerman, Sr., and upon the death of the survivor to divide said one-fourth part with the accumulated income from the investment thereof, as a part of the said principal of the trust fund, among the same beneficiaries and in the same shares, manner and estates as, by the terms of paragraph seven of said will the corpus of theresiduum is to be divided?
The second and third questions will be treated together, since practically the same questions are involved in both, with the exception that the subject-matter of the paragraph "Sixth" mentioned in question III, is New York real estate.
In the eighth paragraph is contained the following provision relating to the income from the trust fund there established:
"* * * I direct said executor to hold the same in trust for the like period during which the residuum of my own estate is directed to be held by it, and during said period to manage and invest the same in the like manner in which my trustee is directed to manage and *Page 503 
invest the residuum of my own estate; and to divide and pay over the net income among the same beneficiaries and in the sameshares, manner and estates as I have directed by this will that the net income of the residuum of my own estate, after the payment of the annuities charged against the same, shall be distributed and divided: * * *." (Italics mine.)
As to the income from the trust created by paragraph "Sixth" the complainant is directed:
"* * * to distribute the net total income of the said trust estate among the same beneficiaries, in the same shares, mannerand estates as the net income of the residuum of my estate, after the payment of annuities, is, by, the terms of this will, to be distributed, * * *." (Italics mine.)
With respect to corpus, paragraph "Eighth" directs the complainant:
"* * * to divide and pay over the corpus of the said trust estate among the same beneficiaries and in the same shares,manner and estates as I have directed by this will that thecorpus of the residuum of my own estate shall be distributed and divided; * * *." (Italics mine.)
With respect to corpus, paragraph "Sixth" directs the complainant:
"* * * to divide the corpus of my said trust estate amongthe same beneficiaries and in the same shares, manner andestates as, by the terms of this will, the corpus of theresiduum of my estate is to be divided." (Italics mine.)
Thus in paragraphs "Sixth" and "Eighth" referring to the disposition of the net income of the residuum of his estate, after the payment of annuities, the testator directs that the income from the fund established by each of said paragraphs shall be disposed of among the same beneficiaries and in the sameshares, manner and estates. In like manner he refers in both paragraphs to the disposition of the corpus of the residuum
of the estate and directs that it be disposed of among the same beneficiaries and in the same shares, manner and estates. The method to be employed by the trustee in disposing of the corpus
and the income in each case is the *Page 504 
same (subject to special directions concerning determination of the trust) as that prescribed in paragraph seven relating to the balance of the net annual income of the residuum, after the payment of annuities. The directions of the testator are definite. Failure to follow such directions would result in some of the beneficiaries receiving larger or smaller shares of either income or corpus than the testator intended and the shares would not be the same, and the beneficiaries would receive different rather than the same estates.
In the eighth paragraph of his will the testator says:
"Whereas, I am one of the beneficiaries under the last will of Warren Ackerman, deceased, * * * under whose will I am authorized to direct, by my duly executed will and testament, the payment of the principal of the share which has been set apart for me; * * * I do hereby direct said principal to be paid to my executor, * * * to hold the same in trust for the like period during which theresiduum of my own estate is directed to be held by it, and during said period to manage and invest the same in the like manner in which my trustee is directed to manage and invest theresiduum of my own estate; * * *."
The paragraph further provides that the estate thus disposed of shall not be held longer by the trustee than the death of the last survivor of testator's first cousins named in his will who were living at the time of the death of said Warren Ackerman. He names: Ernest R. Ackerman, Marion S. Ackerman, Sr., Maria Ackerman Rushmore, Lydia A. Murphy, Caroline E. Lindsley and William M. Crane. Under this trust the trustee will set aside one-fourth of the net annual income from the principal of the trust fund established by said paragraph and reserve and hold the same, with the accumulated income until the death of the last survivor of the testator's first cousins named in said will who were living at the time of the death of Warren Ackerman, and upon the death of such survivor, divide and pay over said one-fourth part with the accumulated income as a part of said principal of the trust fund among the same beneficiaries and in the same shares and estates as by the terms of the seventh paragraph thecorpus of the residuum is to be distributed and divided. *Page 505 
Under the sixth paragraph the trustee will set aside one-fourth part of the net annual income from the principal of the trust fund established by said paragraph and reserve and hold the same, with the accumulated income during the lifetimes of the testator's first cousins, Lydia A. Murphy and Marion S. Ackerman, Sr., and upon the death of the survivor divide said one-fourth part with the accumulated income as part of said principal of the trust fund among the same beneficiaries and in the same shares and estates as by the terms of the seventh paragraph the corpus
of the residuum is to be divided.
IV. Inasmuch as the operative effect of the direction to sell, contained in paragraph six of the will, equitably converted the New York real estate into personalty at the time of the testator's death, have the New Jersey courts exclusive jurisdiction to determine whether or not the testator by said paragraph makes any provision for an accumulation of the rents, issues, profits and income of the trust, or any part thereof? Also does the testator by said paragraph direct the trustee to divide and distribute the entire net income of said trust to and among the same beneficiaries and in the same shares, manner and estates as the said testator by paragraph seven of his will directs the trustee to divide and distribute three-fourths of the net income of the trust of the residuary estate remaining after payment of the annuities; and was the supreme court of the State of New York without jurisdiction to make that part of its decree designated as paragraph 2?
Under the provisions of the sixth paragraph the trustee received a devise of real estate situate in New York to be held in trust during the lifetimes of Lydia A. Murphy and Marion S. Ackerman, Sr. The testator directed the trustee "* * * to sell the same under the option contained in the lease made between me and Novem Realty Corp., or, if said option shall not be availed of, then generally to sell the said real property at such time, for such price and upon such terms as my said trustee shall determine; to invest the proceeds from the sale of the said real property, making reinvestments as occasion may require; * * *." *Page 506 
February 1st, 1932, complainant as executor and trustee brought an action against the heirs-at-law of the testator and the beneficiaries under the will in the supreme court of the State of New York. The complaint in that action alleged that certain questions had arisen as to the true and proper construction of the provisions contained in the sixth and seventh paragraphs of the will, with respect to the New York real estate; that it is claimed by some of the defendants that the provisions of the will cannot lawfully suspend absolute power of alienation of said real estate in violation of section 42 of the Real Property law of the State of New York, or provide for an unlawful accumulation of the rents and profits therefrom in violation of section 61 of the Real Property law; that the complainant is advised and believes that the provisions of the will do not violate any laws of the State of New York, that the power of sale contained in the sixth paragraph of the will is mandatory and that it effected an equitable conversion of said real estate into personal property; that the validity of the trust of said real estate is determinable by the laws of the State of New Jersey, of which the testator was a resident, and not by the laws of the State of New York. Further the complaint alleged that by reason of the foregoing the complainant is unable to determine who are the persons entitled to the rents and profits of said real estate, or to the said real estate, or the proceeds thereof, and prayed the court to construe the last will and testament of the deceased, and determine the meaning, validity and effect of paragraphs `Sixth" and "Seventh," and the meaning, validity and effect of said will with reference to any and all questions that may arise in that action.
The supreme court decreed (1) that the power of sale contained in paragraph six of decedent's will "is a mandatory direction to the plaintiff-trustee to sell the real estate of the testator situated in the city of New York, and effected and constituted an equitable conversion of such New York real estate into personalty at the time of the testator's death," and (2), that the testator by the sixth paragraph of his will "makes no provision for an accumulation of the rents, issues, profits and income of the trust of said New York real estate *Page 507 
created thereby or any part thereof, but by said paragraph of his will said testator directs the plaintiff-trustee to divide and distribute the entire net total income of said trust to and among the same beneficiaries and in the same shares, manner and estate as the said testator by paragraph Seventh of his will directs the plaintiff-trustee to divide and distribute the three-fourths of the net income of the trust of the residuary estate remaining after the payment of annuities."
It is contended by some of the defendants that the decree of the New York supreme court is res judicata. Complainant and some of the remaining defendants contend that the supreme court of New York was without jurisdiction to make the second part of its decree construing paragraph "Sixth," upon the ground that such jurisdiction resides exclusively in the courts of this state.
The decree of the supreme court of New York in so far as it determined the legal or operative effect of the language used in the will with reference to the real estate situated in New York is undoubtedly res judicata since such determination was controlled by the law of the state of the situs of the land, and there is present therein identity of subject-matter, cause of action and persons. Olmsted v. Olmsted, 216 U.S. 386;54 L.Ed. 530; President and Fellows of Harvard College v. Jewett,11 Fed. Rep. 2d 119; Holmes v. Dunning, 260 Mass. 250.
With respect to the second part of the decree it is argued that it, too, must be regarded as final and conclusive upon the parties in view of article 4, section 1, of the constitution of the United States and of the statute enacted to carry that provision into effect (the act of May 27th, 1790; U.S. Rev.Stat. § 905). Thus these defendants invoke the constitutional provision commonly known as the full faith and credit clause. While it is true that under it, and the statute, the courts of this state are bound to give to the judicial proceedings in New York the same faith and credit as they have by law and usage in the courts of New York, this is so only if the proceedings in the New York court were within the jurisdiction of that court. It is always open to the courts of the sister *Page 508 
state to inquire into the jurisdiction of the court which pronounced the judgment in question. When it is demanded of the courts of one state that full faith and credit be accorded to the judgment of the court of a sister state, an inquiry into the jurisdiction (of the latter court) is always permitted, and if it be shown that the proceedings relied upon were without the jurisdiction of the court, they need not be respected. SupremeCouncil of the Royal Arcanum v. Sarah J. Carley et al., 52 N.J. Eq. 642; In re Dorrance, 115 N.J. Eq. 268, 272; affirmed, 13 N.J.Mis. R. 168.
The testator, lived and died a resident of Scotch Plains, Union county, this state, and his will was probated here. "They [wills] are supposed to speak the sense of the testator according to the received law and usages of the country where he is domiciled, by a sort of tacit reference unless there is something in the language which repels or controls such a conclusion. In regard to personalty in an especial manner, the law of the place of the testator's domicile governs the distribution thereof, and will govern in the interpretation of wills thereof unless it is manifest that the testator had the laws of some other country than his own in view." Harrison v. Nixon, 34 U.S. 483, 504.
"The exercise of powers conferred by a testator is controlled by the law of the testator's domicile, both as to the execution of the power and the interpretation of it. Bingham's Appeal,64 Pa. St. 345; Sewall v. Wilmer, 132 Mass. 131; Tatnall v.Hankey, 2 Moo. P.C. 342.
"Now, that the language of a will creating trusts in property stands upon the same footing as any other indication of a testamentary disposition of property seems too plain for discussion.
"The power of the trustee over the personalty and the extent of the right of the cestui que trust to it, are to be ascertained by reading the will in connection with the law of testator's domicile, unless it is manifest that the testator had in mind the law of some other state." Rosenbaum v. Garrett, 57 N.J. Eq. 186; Farnum v. Pennsylvania Company for Insurance, c., 87 N.J. Eq. 108,111. *Page 509 
The law of the situs of the land in the instant case merely regulated its sale, when that shall take place as provided in the will. It has nothing to do with the distribution of the proceeds of such sale among the legatees of the decedent. That distribution is regulated by the law of the testator's domicile, which, at the time of the making of his will and of his death, was New Jersey. Jenkins v. Guarantee Trust and Safe DepositCo. (Court of Errors and Appeals), 53 N.J. Eq. 194, 202;Swetland v. Swetland, 105 N.J. Eq. 608; affirmed, 107 N.J. Eq. 504.
This is apparent not only from the language of the complaint filed in the New York proceedings which conceded that the trust was to be construed under the laws of the State of New Jersey, but also from the very decree which found an equitable conversion of realty into personalty. Comity between courts of sister states therefore demanded that the New York court leave the New Jersey question to the New Jersey courts for decision.
The parties to the suit now pending in this court were also parties to the New York proceedings and neither objected thereto nor appealed therefrom, and it is further argued that such circumstance should be construed as the consent to the jurisdiction of the New York court. A judgment pronounced by a tribunal having no authority to determine the matter in issue, is necessarily and incurably void, and may be shown to be so in any collateral or other proceeding in which it is drawn in question. When the tribunal has no jurisdiction over the subject-matter, no averment can supply the defect, no amount of proof can alter the case. Neither the acquiescence of the parties nor their solicitors can authorize any court to determine any matter over which the law has not authorized it to act. Trustees of SchoolDistrict No. 28, c., v. Stocker, 42 N.J. Law 115; Collins v.Keller, 58 N.J. Law 429, 430; Hudson County Freeholders v.Central Railroad Company of New Jersey, 68 N.J. Eq. 500, 505.
V. Does the death of a beneficiary (other than an annuitant) named in paragraph seven of the will operate to divest him of his interest in the three parts of net annual income after payment of annuities mentioned in said paragraph so *Page 510 
that his executor or administrator is not entitled to the income which he would have received had he survived, except that which accrued up to the date of death if death occurred during a quarter?
The seventh paragraph directs that the residue of the testator's estate be held in trust by complainant during the "twelve lives" and the trustee is directed to divide the balance of the net annual income, after the payment of annuities, into four equal parts, reserving and accumulating one of said equal parts "* * * and dividing and distributing the remaining three parts of said net income quarterly as hereinafter named to the designated natural persons or such of them as may survive, and among the charities hereinafter named, or such of them as shall then be existent, in such manner that each beneficiary may receive and have the following designated number of equal shares thereof, to wit:" (then follow the names of the twelve persons, previously designated as "twelve lives," and the names of twelve charities. The individual beneficiaries each get the one share indicated after their respective names, whereas the charities receive varying numbers of shares).
Of the said "twelve lives" all are surviving, excepting Caroline E.A. Lindsley, Ernest R. Ackerman and William M. Crane. Counsel for the executrix of William M. Crane contends that the deceased had a vested interest in his share of the income until the death of the last of the "twelve lives," and that his demise did not operate to divest his interest therein and that she, as executrix, is entitled to the income which the deceased would have received had he survived. With this contention I do not agree.
The trustee is by the will directed to divide and distribute the income quarterly "to the designated natural persons or suchof them as may survive, and among the charities hereinafter named, or such of them as shall then be existent." (Italics mine.) The wording of the clause indicates that it was the intention of the testator that the trustee ascertain at the end of each quarter who among the natural persons still survive, and which of the charities are still existent, and *Page 511 
pay to each the share or shares of income set after his, her or its name. In other words, upon the death of a beneficiary (other than an annuitant), his interest in the three parts of the net annual income ceases and his executor or administrator under the general rule well settled is entitled to such an apportionment of the income as will give to the beneficiary the benefit of so much of the income as accrued from day to day during his life. Moore
v. Downey, 83 N.J. Eq. 428. William M. Crane having died after two months of the quarter had passed, his executrix is entitled to that portion of his share of the income which accrued up to the date of his death.
Lastly, Beulah B. Crane, executrix under the will of William M. Crane, deceased, Richard Crane, Howard Crane and Jean Chambers applied to the court for an order "to make the annuitants, referred to and mentioned in the `Sixth,' `Seventh' and `Eighth' paragraphs of the will parties defendant to the suit and staying the proceedings until the complainant has made said annuitants parties defendant," upon which application decision was reserved. The matter is now disposed of and results in a denial of such application. The applicants are not annuitants and none of the annuitants have applied to be made parties defendants. Moreover, the annuitants are in nowise affected by the present proceedings, and are therefore neither proper nor necessary parties to this suit. By the will the annuities are a primary charge on the income and the problems before the court relate exclusively to the division and distribution directed to be made by the trustee from the balance of the net annual income remaining after the annuities have been paid. The conclusions herein arrived at with respect to the construction of the various clauses in the will do not affect the rights of such annuitants. *Page 512