The complainant was formerly employed by the defendant company at its Calco plant at Bound Brook, New Jersey. After a hearing, he was discharged from this employment on November 6th, 1941. The termination of his services was undoubtedly the disciplinary action initiated by the defendant union and taken by the company in consequence of his alleged disobedience of a clause incorporated in article I of an agreement between the company and the union. Concisely stated, the complainant now seeks a decree nullifying the supposed validity of this clause of the agreement, enjoining its enforcement, restoring his former employment and authorizing an accounting of the financial losses sustained by the complainant as a result of his dismissal.
It is evident that the complainant was engaged by the company in July, 1941. He was not then a member of the union which has been certified by the National Labor Relations Board as the sole bargaining agent to represent the workers at the Calco plant. During the summer serious discord arose between the company and the union which precipitated a strike on September 30th, 1941. In unison with the other employees, the complainant likewise discontinued work. Union officials were then heard to say that they proposed to negotiate a "closed shop" agreement whereupon the complainant signed an application for membership in the union and paid $1 on account of the initiation fee to his shop steward. The New Jersey State Mediation Board intervened and a so-called "return to work" agreement was negotiated to be operative pending an anticipated final settlement of the dispute through the conciliatory efforts of the *Page 212 
National Defense Mediation Board. The employees resumed work on October 13th, 1941. A final agreement between the company and the union eventuated under the supervision of the board on October 22d 1941.
The union did not achieve a closed shop but it succeeded in embodying in the contract the following article:
 "ARTICLE I UNION MEMBERSHIP
The Company expects that employees who are or who become members of the Union, will maintain such membership in good standing during the life of this contract. In the event an employee fails to maintain his Union membership in good standing, the Company will, upon request by the Union, call in the employee for a conference with an appropriate official or officials of the Company (and, if the Union so desires, with a representative of the Union present), who will remind the employee of the Company's expectation that he maintain his union membership, as stated above, in order to do his part in carrying out the obligations of the Union as a party hereto. In the event any employee engagesin activity in the plant calculated to undermine the status ofthe Union as the bargaining agency, the Company agrees to takeappropriate disciplinary action. The Union agrees to instruct its officers and members that it is a violation of the Company's rules to engage in Union activities during working hours exclusive of proper grievance procedure.
New employees will be presented with a copy of this contract by the Company, upon hiring, and will be asked to cooperate with the Union to carry out the obligations of the contract."
I have italicized the clause which is of paramount significance in the present controversy. Its purpose is distinct. It shelters from supersedure the defendant union as the bargaining agency.
Thereafter, and before his dismissal, the complainant originated several disputatious discussions with his fellow employees while they were assembled in the washroom of the plant, relating to the settlement of the labor dispute and he boldly asserted that the union had "sold out" the employees. Despite warnings that his comments were forbidden by the contract, he expressed his abiding confidence in the truthfulness of his criticism and insisted that the restraining clause of the contract was violative of his right of free speech. At the hearing held in this juncture pursuant to the contract, the complainant frankly acknowledged that *Page 213 
he made the alleged comments and reasserted his right to criticize the negotiations and the terms of settlement to which the union had acceded. He assumed, it is said, an obdurate and impenitent attitude which precluded any disciplinary action more moderate than his immediate discharge. The complainant declared that in his remarks he was quoting from a C.I.O. pamphlet widely distributed among the employees (the defendant union is affiliated with the A.F. of L.) but several others then present have testified that the complainant did not so qualify his statements. Enough has been recounted to disclose that the present conflict arises out of the alleged transgression of one of the terms of the employment. Certainly, the complainant's remarks were of an import calculated to enfeeble and subvert in some degree the status of the union as the bargaining agency.
Evidence was introduced at the final hearing of this cause relating to the truth or falsity of the complainant's comments, the gains and advantages, if any, attained by the employees or the union in the new contract and the knowledge, if any, of the complainant of the clause which, it is averred, he determined to ignore. In view of the conclusion at which I have arrived, it is unnecessary to resolve these factual questions, except it seems advisable to state that there is no proof of fraud or improbity on the part of the representatives of the company and of the union in the negotiations resulting in the settlement of the labor dispute.
It is the insistence of the complainant that the clause in article I of the contract is unfair and indeed invalid. It may be inferred that without it the company and the union would not have composed their differences. To annul it might overthrow the existing accord between the company and its union employees. The chairman of the New Jersey State Mediation Board testified that although such a clause has been only recently inserted in labor contracts, yet he believed that it had now been embodied in many such agreements, probably in many jurisdictions throughout the nation.
The defendant company is admittedly engaged in interstate and foreign commerce. This fact enabled the National Labor *Page 214 
Relations Board to designate the defendant union as the sole and exclusive bargaining agency for the employees of the company at the Calco plant. This fact prevented the State Mediation Board from authoritatively determining the merits of the dispute. This fact and others gave propriety to the supervision of the negotiations of settlement by the National Defense Mediation Board, a national agency created by executive order of March 19th, 1941. Ex. Or. No. 8716, 6 Fed. Reg. 1532. It is this same fact which subjects the labor relations of the defendant company to the National Labor Relations Act. 29 U.S. Code 2703 et seq.
The constitutionality of the National Labor Relations Act was assailed in National Labor Relations Board v. Jones LoughlinSteel Corp., 301 U.S. 1; 57 S.Ct. 615; 81 L.Ed. 893;108 A.L.R. 1352. Its constitutionality was vindicated. The act expressly provides that any individual employee or a group of employees shall have the right at any time to present grievances to their employer. 29 U.S.C. § 159, a. This legislation ordains that labor disputes affecting commerce shall be heard by the National Labor Relations Board in the first instance with exclusive review of its findings or their legal propriety in a Circuit Court of Appeals of the United States or in the Court of Appeals for the District of Columbia. Ibid. § 160 (e and f).
In National Labor Relations Board v. Jones Loughlin SteelCorp., supra, Chief Justice Hughes stated: "The act establishes standards to which the Board must conform. There must be complaint, notice and hearing. The Board must receive evidence and make findings. The findings as to the facts are to be conclusive, but only if supported by evidence. The order of the Board is subject to review by the designated court, and only when sustained by the court may the order be enforced. Upon that review all questions of the jurisdiction of the Board and the regularity of its proceedings, all questions of constitutionalright or statutory authority, are open to examination by the court. We construe the procedural provisions as affording adequate opportunity to secure judicial protection against arbitrary action in accordance with the well-settled rules applicable to administrative *Page 215 
agencies set up by Congress to aid in the enforcement of valid legislation." (Italics mine.)
This passage from the opinion seems definitely to connote that the litigation of disputes comprehended and embraced by the act of Congress shall be first pursued before the National Labor Relations Board, and if aggrieved by the ruling of the board, the dissatisfied litigant shall invoke the appellate jurisdiction of the Circuit Court of Appeals. Interference with this procedure attracted the attention of the United States Supreme Court inMyers v. Bethlehem Corp., 303 U.S. 41; 58 S.Ct. 459;82 L.Ed. 638. Mr. Justice Brandeis delivering the opinion of the court, observed that: "The power `to prevent any person engaging in any unfair practice affecting commerce' has been vested by Congress in the Board and the Circuit Court of Appeals and Congress has declared: `This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law or otherwise.'" The lack of jurisdiction was recognized as an insuperable objection to the maintenance of an equitable cause of action in the Federal District Courts to abridge the prerogatives of the board.
Thus, it occurs to me that if the subject-matter of the dissension between the complainant and the defendant company is appropriately cognizable by the National Labor Relations Board, the complainant has misconceived the available course to his desired relief, first, because the procedure prescribed by the federal act has been declared by the court of last resort to be exclusive and, secondly, because equity does not ordinarily intrude where an adequate procedure for the protection of the rights involved is elsewhere provided. Vide, Surpass LeatherCo. v. Winters, 23 F. Supp. 776; Jamestown Veneer and PlywoodCorp. v. Boland, 15 F. Supp. 28.
The protrusive question is whether the present controversy between the complainant, an employee, and the defendant company, an employer, in respect of an exacting clause in the contract of employment is encompassed by the National Labor Relations Act. An examination of the reported decisions fails to expose a case precisely in point. *Page 216 
A "labor dispute" is to be understood as "any controversy concerning terms, tenure or conditions of employment." Section152 (a). Incidentally, this term cannot be discovered elsewhere in the act. However, the obligation of employees to refrain from any "activity in the plant calculated to undermine the status of the Union as the bargaining agency * * *" is assuredly a term of employment. Forsooth, the complainant contends that this exaction is an unfair labor practice, i.e., a practice unfair to himself and other laborers at the plant. If, as previously noted, an individual employee or any group of employees as well as the certified bargaining agency may present grievances to the employer (section 159, a) it is implicit that if the grievance is not deemed to have been satisfactorily adjusted by the employer such individual or group shall likewise possess the right to invoke the authority of the Labor Board and ultimately the jurisdiction of the appropriate Circuit Court of Appeals. This right accorded to the individual employee by the act was recognized as an element of material significance in determining the constitutionality of the enactment. NationalLabor Relations Board v. Jones Loughlin Steel Corp., supra
(at pp. 45, 47).
The complainant has not proved that he made an adequate endeavor to ascertain the availability of the procedure afforded by the National Labor Relations Act. His testimony tends only to disclose that he visited an office of the board and upon relating his grievance orally to someone at the office (whom, he does not know — perhaps a secretary or stenographer) he was informed by this person that the board could not aid him. It is acknowledged that he never presented to the board a complaint in form to invoke its administrative authority and thus he has not obtained any adjudication whatever from the board.
Therefore in the present cause, the fact is that the complainant, ignoring the existence of the Labor Board, implores this court initially to pass upon the validity of a contractual term of employment to which he was subjected by an employer engaged in interstate commerce (at present a war industry) whose labor relations were and are subject to the National Labor Relations Act and which term of employment is contained *Page 217 
in an agreement negotiated under the supervision of the National Defense Mediation Board, a federal agency, by a union certified by the National Labor Relations Board pursuant to the provisions of the federal act.
A survey of the point of jurisdiction, immediately exposes the infeasible character of an assumed jurisdiction by state courts of such a controversy. Multiple interpretations and decisions, perhaps divergent and conflicting, might ensue concerning identical or similar clauses of such contracts. The recurring conflict involving the scope of federal powers as they relate to interstate commerce would be aggravated. The state court in abrogating a cohesive part of such a labor contract would destroy the established harmonious relationship between the parties and yet lack authority to control or abate the resultant upheaval, all of which powers are possessed by the federal agencies. The manifest object of the Labor Relations Act is to furnish a single tribunal to hear and determine in the first instance labor disputes affecting interstate commerce with adequate and exclusive opportunity for judicial review in the designated court.
Assuredly, this court cannot restrain the Labor Board from exercising the powers with which it has been clothed by the Congress, Myers v. Bethlehem Corp., supra; see, also,Surpass Leather Co. v. Winters, supra; nor can it review an order made by the board. "The order of the Board is subject to review by the designated court and only when sustained by the court may the order be enforced." Board v. Jones Loughlin,supra.
A case in the Supreme Court of Tennessee is likewise illustrative of the lack of jurisdiction of state tribunals.Manning v. Feidelson, 175 Tenn. 576; 136 S.W. Rep. 2d510. The facts were that an employer had been found guilty of unfair labor practices by the National Labor Relations Board. Among other things, the company was ordered to deposit $20,000 (lost pay) with the regional director of the board as trustee for the employees. There were three groups of employees in the company — those associated with the union which prosecuted the suit against the employer, those belonging to a rival union and non-unionized employees. The trustee *Page 218 
determined to divide the fund solely among the members of the first group. A member of the last group instituted a suit before the Chancellor of Tennessee seeking a construction of the order and stipulation or an order and decree determining the proper parties to participate in the distribution of the fund. Upon a plea in abatement the Chancellor dissolved the preliminary injunction against the trustee. In affirming the action of the Chancellor the Supreme Court of Tennessee held that the state court lacked jurisdiction of the subject-matter of the dispute. After noting the procedural provisions of the National Labor Relations Act, the appellate court asserted that the Labor Board was a federal agency designed to regulate interstate commerce just as the interstate commerce commission; the proceedings of the latter body were not subject to state review and that no possible theory could be visualized for the exercise of such a power by state courts over the acts and proceedings of the National Labor Relations Board.
In the Myers Case, supra, it was also held that the complainant cannot circumvent the settled rule requiring him to exhaust first his administrative remedies. I again emphasize the fact that the contract here impugned regulates employment in an enterprise participating in interstate commerce and is a contract negotiated in pursuance of the congressional design. The prayer of the bill is to invalidate, not to aid in the enforcement of, the clause of the contract.
The case of Wucker Furniture Co. v. Furniture Salesmen'sUnion, C.I.O. Local 853, 126 N.J. Eq. 145; 8 Atl. Rep. 2d275, is not in point. Jurisdiction was not challenged. The case of Dooley v. Lehigh Valley Railroad Co., 130 N.J. Eq. 75;21 Atl. Rep. 2d 334; affirmed, 131 N.J. Eq. 468; 25 Atl. Rep.
2d 893, is readily distinguishable in that the agreement under consideration was not negotiated under the supervision of any federal agency. It was not attacked. The bill was filed by members of the union to restrain the officers of the union from disregarding the contract in granting seniority rights.
The conclusion is that in the circumstances of the present case as disclosed by the evidence, this court lacks jurisdiction *Page 219 
of the subject-matter of the cause; that the complainant has failed to prove that he has exhausted those remedies which would appear to be appropriate and available to him; and that equity will not ordinarily intrude where there is a more practicable and adequate procedure and remedy already furnished by apt legislation.
The question of jurisdiction has been presented and, of course, if this court lacks jurisdiction of the subject-matter, any decree granted by it would be itself a nullity. Fidelity UnionTrust Co. v. Ackerman, 121 N.J. Eq. 497; 191 Atl. Rep. 813; 33C.J. 1072 §§ 34 et seq.
 A decree will be advised dismissing the bill. *Page 220